UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
Edison Torres-Jurado,

                            Plaintiff,                        **MEMORANDUM & ORDER**
                                                                                      20-CV-04575 (DG) (CLP)
      -against-

United States of America, *et al.*,

                            Defendants.
-----------------------------------------------------------------X
DIANE GUJARATI, United States District Judge:

        On September 25, 2020, Plaintiff Edison Torres-Jurado commenced this action. *See* ECF No. 1. On October 24, 2021, Plaintiff filed the operative Second Amended Complaint. *See* Second Amended Complaint ("SAC"), ECF No. 18.[1] Plaintiff states in the Second Amended Complaint's "Prelimi[n]ary Statement" that the Second Amended Complaint "is a complaint under the Federal Tort Claims Act and pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*" and that Plaintiff "seeks damages for personal and physical injuries sustained as a result of the defendants' violation of his constitutional rights secured by the Fourth Amendment, Fifth Amendment, Eighth Amendment, Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution, and for rights secured under the laws and Constitution of the State of New York." *See* SAC at 1. Plaintiff's claims stem from his assertion that he "was deprived of his constitutional and common law rights when the individual defendants unlawfully confined plaintiff and caused the unjustifiable detention and abuse of plaintiff." *See* SAC at 1.

        The Second Amended Complaint asserts six causes of action, styled as follows: (1)

---

[1] Because there are paragraph numbering errors in the Second Amended Complaint, citations to the Second Amended Complaint herein are to page numbers rather than paragraph numbers.

"Violations of Plaintiff's Fourth Amendment and Fourteenth Amendment Rights," (2) "Violation of Plaintiff's Fourth Amendment Rights," (3) "Violation of Plaintiff's Fourth Amendment Right Malicious Prosecution," (4) "Violation of Plaintiff's Eighth Amendment Right Cruel and Unusual Punishment," (5) "Intentional and Negligent Infliction of Emotional Distress," and (6) "Loss of Consortium." See SAC at 8-15. Although the Second Amended Complaint is not entirely clear, Plaintiff appears to bring a false arrest and imprisonment claim in the First Cause of Action and an excessive force claim in the Second Cause of Action. See SAC at 8-10. Accordingly, the Court hereinafter refers to the First Cause of Action as the "false arrest and imprisonment claim" and refers to the Second Cause of Action as the "excessive force claim." The Court hereinafter refers to the Third Cause of Action as the "malicious prosecution claim," the Fourth Cause of Action as the "cruel and unusual punishment claim," and the Fifth and Sixth Causes of Action together as the "state law claims."[2]

Plaintiff seeks compensatory damages in the amount of $4,500,000; punitive damages in the amount of $4,500,000; a court order, pursuant to 42 U.S.C. § 1988, stating that Plaintiff is entitled to the costs involved in maintaining this action, including attorney's fees; and "the execution of I-918, supplement B, certification for U visa on behalf of plaintiff." See SAC at 15.

Pending before the Court is the Motion to Dismiss the Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure brought by Defendants United States of America, Secretary of the Department of Homeland Security Alejandro Mayorkas, Customs and Border Protection New York Field Office Director Thomas Decker, and, in his official and individual capacities, Deportation Officer Geraldo Paoli

---

[2]  Although there are references to "Equal Protection Claim" in briefing, the Second Amended Complaint does not appear to allege an Equal Protection claim.

(collectively, the "Moving Defendants").  *See* Defendants' Notice of Motion, ECF No. 30; Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Br."), ECF No. 31; Reply Memorandum in Further Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 33; *see also* Defendants' Supplemental Letter Brief ("Defs.' Supp. Br."), ECF No. 34.[3] Plaintiff opposes the Moving Defendants' motion.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Br."), ECF No. 32; *see also* Plaintiff's Supplemental Letter Brief in Opposition ("Pl.'s Supp. Br."), ECF No. 35; ECF No. 36.

For the reasons set forth below, the Moving Defendants' Motion to Dismiss is granted and the Second Amended Complaint is dismissed.

## BACKGROUND

### I.     Factual Background

As alleged in the Second Amended Complaint, Plaintiff "is a native of Ecuador who was admitted to the United States as a Lawful Permanent Resident on or about November 26, 1979,

---

[3]   The Moving Defendants note that Defendants John Does 1-3 have not been identified and therefore are not represented by the United States Attorney's Office for the Eastern District of New York.  *See* Defs.' Br. at 4 n.3.  The Moving Defendants further note that, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Alejandro Mayorkas is substituted as a Defendant for Kevin K. McAleenan.  *See* Defs.' Br. at 4-5; *see also* Fed. R. Civ. P. 25(d).

Although Plaintiff refers to "Defendant Department of Homeland Security (DHS)" in the Second Amended Complaint, *see* SAC at 4; *see also* SAC at 10, the Department of Homeland Security is not listed as a Defendant in the caption of the Second Amended Complaint, *see* SAC at 1, and Plaintiff indicated prior to filing the Second Amended Complaint that he would be removing the Department of Homeland Security as a Defendant, *see* ECF No. 14 at 2.  Thus, the reference to the Department of Homeland Security as a "Defendant" appears to be an error.  Similarly, although Plaintiff refers to "Defendant William Barr" in one place in the Second Amended Complaint, *see* SAC at 4, Plaintiff lists the United States of America – not Barr – as a Defendant in the caption of the Second Amended Complaint, *see* SAC at 1, and elsewhere in the Second Amended Complaint refers to "Defendant[] United States of America," *see* SAC at 10.  The reference to William Barr as a "Defendant" appears to be an error.  Plaintiff's apparent errors do not affect the Court's analysis herein.

3

when he was 12 years old." *See* SAC at 3. Plaintiff alleges that he "was ordered removed in 2005 and was granted an indefinite stay of removal by [Immigration and Customs Enforcement ("ICE")], due to special circumstances and his cooperation in a related criminal investigation." *See* SAC at 3. Plaintiff alleges that, "[i]n reliance on that, for the following twelve years, he has continued to raise his family here and purchased a franchise that he currently owns and operates." *See* SAC at 3. Plaintiff alleges that, "[w]ith no change in circumstance, on November 28, 2017, ICE apprehended Plaintiff while he was attending his routine, scheduled check-in, in accordance with the July 20, 2005 Order of Supervision." *See* SAC at 3; *see also* SAC at 5.

Plaintiff alleges that he "has had no violations of the agreement dictating his indefinite stay" and that, "[a]t the time of his unlawful arrest, despite residing in New York consistently for more than 20 years, ICE transferred him all the way across the country to Louisiana, in an unknown location and away from his family." *See* SAC at 6. Plaintiff alleges that he was detained for seven months. *See* SAC at 3, 6. Plaintiff further alleges that "[d]uring his seven months of detention, ICE transported Plaintiff to the Ecuadorian Consulate at least five (5) times . . . to requests travel documents," and alleges that "[a]ll requests had been denied, as previous application was also denied in 2005." *See* SAC at 6. Plaintiff alleges that Defendant Paoli – "the Deportation Officer assigned to oversee [Plaintiff's] supervision, detention and deportation," *see* SAC at 4 – "[w]ith full knowledge that [Plaintiff] was represented by counsel in an ongoing matter before the courts against the U.S. government, . . . falsely stated to the consulate [that Plaintiff] did not have an attorney and did not have an ongoing case in an effort to acquire the travel document for his removal," *see* SAC at 6; *see also* SAC at 4-5 (alleging that Defendant Paoli, "in conjunction with defendant Decker, with full knowledge that a travel document would not be issued to [Plaintiff] knowingly continued his detention"). Plaintiff further alleges that

4

Defendant Paoli "attempted to have [Plaintiff] sign a false statement that [Plaintiff] was not being cooperative in an effort to show a violation on against [Plaintiff]." *See* SAC at 7; *see also* SAC at 5. Additionally, Plaintiff alleges that Defendants Decker and Paoli denied Plaintiff's release and had Plaintiff transferred for removal, "[d]espite knowing that the Ecuadorian Consulate would not issue the travel document and having full knowledge that [Plaintiff] had an ongoing and active case with the U.S. government." *See* SAC at 7.

Plaintiff alleges that Defendants John Does 1-3 are federal officers who "with full knowledge that [Plaintiff] was received for the purpose of removal without any travel documents, subjected [Plaintiff] to torturous conditions and methods in an effort to get [Plaintiff] to waive his rights and voluntarily leave the United States." *See* SAC at 5. Plaintiff alleges that "[t]hose conditions include, but are not limited to: Sleep Deprivation; Cold Cell treatment which involves keeping the cell at a constant 50 degrees or lower; and with holding food." *See* SAC at 5; *see also* SAC at 7 (alleging that, while in custody, Plaintiff "was kept in a cell with extremely cold conditions and no blankets or shoes"). Plaintiff alleges that he "was awakened at different hours of the early morning and late night and questioned to sign documents waiving his rights and authorizing a voluntary removal from the United States." *See* SAC at 7. Plaintiff further alleges that he was "sleep deprived, hungry and disoriented." *See* SAC at 7.

Plaintiff alleges in the Second Amended Complaint that although he "was released by order of the District Court of New Jersey pursuant to a habeas petition, he faces imminent re-arrest as evidenced by ICE's representation that their agents have been made aware that the stay has been lifted." *See* SAC at 7.[4]

---

[4] Plaintiff alleges that his arrest and detention were "without warning, justification or any change in circumstances" and were "contrary to ICE's own Order of Supervision permitting [Plaintiff] an indefinite stay of removal as long as he complies with its requirements and does

Plaintiff alleges that he suffered a variety of injuries. *See, e.g.*, SAC at 3.

## II. Procedural Background

On September 25, 2020, Plaintiff commenced this action. *See* ECF No. 1. On October 24, 2021, Plaintiff filed the operative Second Amended Complaint. *See* ECF No. 18.

On July 11, 2022, the Moving Defendants filed the instant Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which Plaintiff opposed. *See* ECF Nos. 30-33.

By Order dated March 2, 2023, the Court directed the Moving Defendants to file a supplemental letter brief providing further support for their argument that, under 8 U.S.C. § 1252(g) ("Section 1252(g)"), Plaintiff's claims are not subject to judicial review. *See* March 2, 2023 Order. The Court directed the Moving Defendants to address in their supplemental letter brief the subsequent history of *Reeves v. United States*, No. 19-CV-08629, 2020 WL 6431628 (S.D.N.Y. Nov. 2, 2020). *See* March 2, 2023 Order. On March 16, 2023, the Moving Defendants filed their supplemental letter brief, *see* ECF No. 34, and on March 23, 2023, Plaintiff filed his response, *see* ECF No. 35.

On November 17, 2023, Plaintiff filed a letter to which he attached, "for consideration in regards to the issue of jurisdiction and defendants' pending motion to dismiss," the October 29,

---

not violate them; which he had not." *See* SAC at 5 (quotation omitted). Additionally, Plaintiff alleges that his detention was "not authorized by statute," that his detention "violates the Code of Federal Regulations and the Constitution because the post-order custody review process is constitutionally inadequate," and that "there were numerous policy and procedural violations on the part of defendants in their actions to continue to detain [Plaintiff] and cause financial and emotional injury to his family." *See* SAC at 7-8. Plaintiff clarifies in his briefing, however, that "he is not claiming to challenge the determination of the Attorney General or the Secretary of Homeland Security, but rather he is challenging the constitutionality of the treatment he received as being constitutionally flawed." *See* Pl.'s Br. at 7 n.2 (alterations accepted) (quotation omitted); *see also* ECF No. 22 at 1.

6

2023 Order of United States District Judge Analisa Torres of the United States District Court for the Southern District of New York in *Torres-Jurado v. Biden, et al.*, No. 19-CV-03595, which granted Plaintiff's motion for an emergency stay of removal. *See* ECF No. 36.

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*; *see Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) ("The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." (quotation omitted)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

When a court is faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Pressley v. City of N.Y.*, No. 11-CV-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) (quotation omitted); *see also United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

7

*Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court must "accept all 'well-pleaded factual allegations' in the complaint as true" and "'construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff.'"  *Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (first quoting *Iqbal*, 556 U.S. at 679; then quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)).  However, "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do," and dismissal is proper where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 555, 558.  A court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions."  *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quotation omitted); *see also Iqbal*, 556 U.S. at 678 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Twombly*, 550 U.S. at 555)); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that "factual allegations must be sufficient to support necessary legal conclusions" and "plausibly suggest an entitlement to relief").  "In considering a motion to dismiss for failure to state a claim, '[a] district court is normally required to look only to the allegations on the face of the complaint,'" though "[it] may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice."  *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

# DISCUSSION

For the reasons set forth below, the Motion to Dismiss is granted and the Second Amended Complaint is dismissed in its entirety.

## I.     Section 1252(g) Bars Certain Claims in the Second Amended Complaint

Section 1252(g) deprives the Court of jurisdiction over Plaintiff's false arrest and imprisonment claim and Plaintiff's malicious prosecution claim and those claims must therefore be dismissed.

### A.     Applicable Law

Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The Supreme Court has stated that this "provision applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (emphasis in original) (quotations omitted). In *AADC*, the Supreme Court described its reading of Section 1252(g) as a "narrow reading." *See* 525 U.S. at 486. Subsequently, in *Jennings v. Rodriguez*, the Supreme Court observed that, in *AADC*, the Supreme Court "did not interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General" and instead "read the language to refer to just those three specific actions themselves." *See* 583 U.S. 281, 294 (2018) (citing *AADC*, 525 U.S. at 482-83). In *Jennings*, the Supreme Court also observed that "when confronted with capacious phrases like 'arising from,'

9

[the Supreme Court has] eschewed uncritical literalism leading to results that no sensible person could have intended." *See id*. at 293-94 (quotations omitted).

### B. Plaintiff's False Arrest and Imprisonment Claim and Plaintiff's Malicious Prosecution Claim are Barred by Section 1252(g)

The Moving Defendants argue that Section 1252(g) deprives the Court of jurisdiction over all of Plaintiff's claims. *See generally* Defs.' Br.; Defs.' Reply; Defs.' Supp. Br. The Moving Defendants assert that Plaintiff's claims "all arise from ICE's execution of a removal order against him, resulting in his detention for seven months in federal facilities" and, as a result, "Plaintiff's claims are not subject to judicial review and must be dismissed." *See* Defs.' Br. at 6-7; *see also* Defs.' Reply at 4-5; Defs.' Supp. Br. at 1-3. With respect to Plaintiff's excessive force claim, the Moving Defendants, relying on out-of-Circuit caselaw, assert that "[e]ven allegations of excessive force, when connected directly to an attempt to seize an individual in order to execute a removal order, have been found to fall within the jurisdictional bar" of Section 1252(g). *See* Defs.' Supp. Br. at 2. Although the Moving Defendants note that the United States Court of Appeals for the Second Circuit "has not issued a decision as to whether 8 U.S.C. § 1252(g) extends to all alleged torts arising from the execution of a removal order," they argue that "other Circuits have embraced a very broad interpretation of the statute." *See* Defs.' Supp. Br. at 2.

Plaintiff argues that his claims do not fall under Section 1252(g)'s jurisdictional bar. *See* Pl.'s Supp. Br. at 1-3. Plaintiff focuses on (1) his malicious prosecution claim, arguing that his "malicious prosecution claim does not arise from the decision to commence the proceedings" and instead arises "from the Defendants' repeatedly and knowingly making false statements to the consulate in continued attempts to procure travel documents and continuing to detain Plaintiff and transport him to another state for deportation with full knowledge that travel

10

documents could not and would not be received," *see* Pl.'s Supp. Br. at 2 (quotation omitted); and (2) his excessive force claim, arguing that his excessive force claim is not in connection with the commencement of his removal proceedings, that his excessive force claim is also not connected to the Attorney General's execution of the removal order, and that the claim is "regarding the torturous treatment he received while incarcerated in a brutal attempt to coerce Plaintiff to sign documents waiving his rights and authorizing voluntary removal," *see* Pl.'s Supp. Br. at 2-3.[5]

Plaintiff's false arrest and imprisonment claim is barred by Section 1252(g). Here, as alleged, Plaintiff's arrest and detention were effectuated pursuant to a final order of removal. Plaintiff's false arrest and imprisonment claim thus arises from the "decision or action by the Attorney General to . . . execute removal orders" and falls within the scope of Section 1252(g). *See Reeves v. United States*, No. 20-4095, 2022 WL 2812881, at *1 (2d Cir. July 19, 2022) (affirming district court's dismissal of false arrest claim as barred by Section 1252(g) where district court found that false arrest claim arose from the execution of a removal order).

Similarly, Plaintiff's malicious prosecution claim is barred by Section 1252(g) because it arises from the decision to commence proceedings, adjudicate cases, or execute removal orders. *See* 18 U.S.C. § 1252(g). By its very nature, the malicious prosecution claim appears to seek to impose liability for the decision to commence proceedings and/or execute the removal order. *See* SAC at 10-11 (alleging that that "Defendants commenced and continued the violation proceedings against plaintiff" and that "[t]here was actual malice in their actions and an absence

---

[5] Plaintiff further argues that the Court has jurisdiction over this matter under 28 U.S.C. § 2241 ("Section 2241"). *See* Pl.'s Br. at 7-8. Section 2241, however, does not provide a basis for the Court's jurisdiction here. As alleged in the Second Amended Complaint, Plaintiff is no longer in custody. *See* SAC at 7. Moreover, Plaintiff does not seek habeas relief. *See* SAC at 15.

11

of knowledge and a belief that a travel document would be issued"); *Nakamura v. United States*, No. 10-CV-02797, 2012 WL 1605055, at *5 (E.D.N.Y. May 8, 2012); *El Badrawi v. U.S. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 264-65 (D. Conn. 2008).

Plaintiff's excessive force claim does not, however, appear to be barred by Section 1252(g). As an initial matter, the Second Circuit does not appear to have determined whether excessive force claims are necessarily barred by Section 1252(g). *See Reeves*, 2022 WL 2812881, at *2.[6] Further, as noted above, under the Supreme Court's "narrow reading" of Section 1252(g), the statute "applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *See AADC*, 525 U.S. at 482 (emphasis in original) (quotations omitted); *see also Jennings*, 583 U.S. at 293-94.[7] Here, the Court cannot conclude that Plaintiff's excessive force claim is sufficiently connected to the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders such that it would be barred by Section 1252(g) and, accordingly, the Court considers the excessive force claim on the merits. *See Vetcher v. Immigr. Customs Enf't Agents Grp. 1*, No. 18-CV-06798, 2023 WL 6879594, at *4 (E.D.N.Y. Oct. 18, 2023); *see also You v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018)

---

[6]  In *Reeves*, the plaintiff – for the first time on appeal – argued that regardless of whether ICE officers were executing a final order of removal when they arrested him, Section 1252(g) does not deprive a court of jurisdiction to consider a Federal Tort Claims Act ("FTCA") claim for excessive force. *See* 2022 WL 2812881, at *2. At oral argument, the Government took the position that jurisdiction over the excessive force claim may turn on the nature of the force alleged and the Government consented to remand of the FTCA excessive force claim. *See id.* The Second Circuit vacated the district court's dismissal of plaintiff's excessive force claim and remanded to the district court so that it could consider the jurisdictional issue. *See id.*

[7]  As noted above, the Moving Defendants argue that "other Circuits have embraced a very broad interpretation of the statute." *See* Defs.' Supp. Br. at 2. A "very broad" interpretation of Section 1252(g), however, would be at odds with the Supreme Court's "narrow reading," as expressed in *AADC*, *see* 525 U.S. at 482, 486, and reiterated in *Jennings*, *see* 583 U.S. at 294.

("Respondents are empowered to remove Petitioner at their discretion. But they cannot do so in any manner they please.").

For the same reason, the Court cannot conclude that the cruel and unusual punishment claim – which is premised on the *conditions* of Plaintiff's confinement – is barred by Section 1252(g). *See You*, 321 F. Supp. 3d at 457. Accordingly, the Court considers the cruel and unusual punishment claim on the merits.[8]

## II. Plaintiff's Non-Barred Claims are Dismissed for Failure to State a Claim

For the reasons set forth below, the excessive force claim and the cruel and unusual punishment claim each must be dismissed for failure to state a claim.

### A. Plaintiff's Excessive Force Claim is Dismissed for Failure to State a Claim

The Moving Defendants argue, *inter alia*, that the Second Amended Complaint contains no factual allegations from which the Court could recognize a plausible claim for excessive force. *See* Defs.' Br. at 13; *see also* Defs.' Reply at 6-7. The Court agrees that Plaintiff has not plausibly alleged an excessive force claim.

Plaintiff alleges in the Second Amended Complaint: "The use of excessive force by defendants in wrongly arresting and incarcerating plaintiff, depriving him of his liberty and freedom for seven (7) months was an objectively unreasonable physical seizure of plaintiff in violation of his rights under the Fourth Amendment to the United States Constitution." *See* SAC at 9-10. This bare reference to "excessive force" does not state a claim for excessive force, *see Faber*, 648 F.3d at 104; *Ruston*, 610 F.3d at 59, and the Second Amended Complaint does not

---

[8] The Court need not – and does not – address the Moving Defendants' argument that the Court lacks jurisdiction over Defendants' decision to revoke Plaintiff's administrative stay and implement his order of removal, *see* Defs.' Br. at 7-8, given that, as set forth above, Plaintiff does not in the instant action challenge the determination of the Attorney General or the Secretary of Homeland Security.

13

otherwise contain factual allegations plausibly demonstrating the use of force, let alone excessive force, *see generally* SAC.[9]

Plaintiff's excessive force claim must therefore be dismissed for failure to state a claim.

### B. Plaintiff's Cruel and Unusual Punishment Claim is Dismissed for Failure to State a Claim

Plaintiff styles his cruel and unusual punishment claim as an Eighth Amendment claim and references the Fourth and Fourteenth Amendments. *See* SAC at 12. The Moving Defendants argue that Plaintiff has no claim for relief under the Eighth Amendment because the Eighth Amendment does not apply to civil detentions and that even when analyzed under the Due Process Clause of the Fifth Amendment – because the claim is alleged as against the federal government – Plaintiff's allegations fail to state a claim. *See* Defs.' Br. at 14-15. In his briefing, Plaintiff does not contend with these arguments or engage with the applicable legal standards. *See generally* Pl.'s Br.; Pl.'s Supp. Br. The Court agrees that Plaintiff fails to state a claim here.

Plaintiff – who was a civil detainee – cannot state a claim under the Eighth Amendment, which does not apply to civil detainees. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (noting that the Eighth Amendment is not applicable to an individual who has not been convicted); *Halladene v. Decker*, No. 20-CV-02883, 2020 WL 2133057, at *2 (S.D.N.Y. May 5, 2020) (noting that "the Due Process Clause of the Fifth Amendment, rather than the Eighth

---

[9] In briefing, Plaintiff appears to blend the factual allegations underlying his excessive force claim and those underlying his cruel and unusual punishment claim. *See* Pl.'s Br. at 8-9 (in section titled "Plaintiff Has a Valid Excessive Force Claim," stating, *inter alia*, that "Plaintiff was kept in a cell with extremely cold conditions with no blankets or shoes," that Plaintiff "was awakened at different hours of the early morning and late night and questioned to sign documents waiving his rights and authorizing a voluntary removal from the United States," and that "Plaintiff's treatment while in custody and care of the government and defendants was cruel and unusual and, as such, Plaintiff has a valid Excessive Force claim" (quotations omitted)); *see also* Pl.'s Supp. Br. at 3. In any event, the allegations regarding Plaintiff's conditions of confinement do not support Plaintiff's excessive force claim.

14

Amendment, governs the treatment of federal civil detainees").

In any event, even if analyzed under the Due Process Clause of the Fifth Amendment, Plaintiff's allegations regarding his conditions of confinement are insufficient to state a claim. Plaintiff does not plausibly allege a sufficiently serious deprivation or a sufficiently culpable state of mind with respect to any Defendant. *See Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29-30 (2d Cir. 2017) (setting forth applicable legal standard for claims of unconstitutional conditions of confinement under the Fourteenth Amendment, citing to, *inter alia*, *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and noting that "the analysis in this decision should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment"); *see also Valenzuela Arias v. Decker*, 612 F. Supp. 3d 307, 316 (S.D.N.Y. 2020); *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 348-49 (S.D.N.Y. 2020).[10]

Plaintiff's cruel and unusual punishment claim must therefore be dismissed for failure to state a claim.[11]

---

[10] Notably, although Plaintiff alleges that he was subjected to "torturous conditions and methods," including "Sleep Deprivation," "Cold Cell treatment," and "with holding food," *see* SAC at 5; *see also* SAC at 7, and that Plaintiff was "sleep deprived, hungry and disoriented," *see* SAC at 7, Plaintiff does not allege, for example, how frequently or over what period of time he was subjected to these conditions or otherwise set forth sufficient factual support for any alleged deprivation. *See Darnell*, 849 F.3d at 37 (stating that "[the Second Circuit's] cases are clear that conditions of confinement cases must be evaluated on a case-by-case basis according to severity and duration"); *see also Walker*, 717 F.3d at 125; *Ruston*, 610 F.3d at 59 (noting that "factual allegations must be sufficient to support necessary legal conclusions" and "plausibly suggest an entitlement to relief"). And, Plaintiff's allegations with regard to state of mind – such as the allegation that "the defendants" "did undertake with deliberate indifference, intentionally, maliciously and/or with reckless disregard for the natural and probable cause of their acts without lawful justification" certain actions, *see* SAC at 12 – are too conclusory. *See Faber*, 648 F.3d at 104 (a court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions" (quotation omitted)).

[11] In light of the dismissal of Plaintiff's federal claims, principles of judicial economy and

**CONCLUSION**

For the reasons set forth above, the Moving Defendants' Motion to Dismiss, ECF No. 30, is GRANTED and the Second Amended Complaint, ECF No. 18, is DISMISSED.[12]  Dismissal of the First, Third, Fifth, and Sixth Causes of Action is without prejudice.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

                                          */s/ Diane Gujarati*
                                          DIANE GUJARATI
                                          United States District Judge

Dated: March 12, 2024
        Brooklyn, New York

---

comity counsel heavily in favor of declining to retain jurisdiction over Plaintiff's state law claims and the Court therefore declines to exercise supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013) ("Courts 'consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise' supplemental jurisdiction." (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).

[12] Although the Court need not – and does not – reach certain of the Moving Defendants' arguments in light of the above, the Court notes that the Moving Defendants raise a variety of persuasive arguments as to why Plaintiff's claims otherwise warrant dismissal.  *See, e.g.*, Defs.' Br. at 8-11, 17-21.